The opinion of the court was delivered by
DeBlanc, J.
Under a writ of fieri facias issued out of a judgment obtained by plaintiff against defendant, the dry dock and its appurtenances belonging to the latter were seized and sold for §7300. The proceeds of that sale are in the hands of the sheriff, and the object of this litigation is to regulate, between the creditors of defendant, the distribution of said proceeds.
Who are those who claim to be its creditors ?
1. The State of Louisiana, for the taxes of 1874, 1875 and 1876, ¡amounting, in the aggregate, to §493, and two per cent thereon for attorney’s fees. No proof has been introduced of either the existence •or registry of that claim, and it should not have been allowed.
26 A. 592.
*1366 2. The city of New Orleans, for a license of 1876, two hundred dollars. The evidence that such a license was due has not been recorded, and the city is not entitled to a preference which can be acquired — as to-third parties — but from the date of the registry prescribed by our constitution and laws. C. 123. 26 A. 80. 350. 592. 28 A. 496.
3. Peter Marcy, as a lessor, $1836.33, with interest and costs. He— in 1865 — leased to one Spencer Field a shipyard fronting on the Mississippi river. The rent of that property, from 1867 to. 1875, was paid by the defendant, and it is manifest that — since its formation — the company has had control of that property and has used it for its exclusive-benefit. The lease was renewed and extended by its own officers. ,
Those who oppose this claim contend that the company’s dock was. in the river, at a distance of sixty or one hundred feet from the bank,, and that Marcy had no privilege thereon, because it was not on the property leased by him. The dock was attached in front of said property for a permanent purpose, and connected with it by a permanent, staging. Without the yard, the dock would have been useless to the-company, and the lessor’s privilege did extend to and embrace it.
5 A 36 — 6 A. 452. C. C. 2705.
4. John Gf. Follett and Thomas G. Mackie — as also Spencer Field and J. B. Williams — were stockholders in the Ocean Dry-Dock Company, and their liabilities as such must be satisfied before their salaries as officers of said company. The claims of said Follett and Mackie,, that of N. O. Folger, as transferree of Spencer Field, and of Francisco Yillegas — as transferree of J. B. Williams, may be due, but can be legally paid only out of any balance which may remain of the proceeds in the sheriff’s hands, after a full satisfaction of those creditors who are-not members of said company and who did not share in the division of Its stock. It is in evidence that Follett, Mackie, Field and Williams divided among themselves, in settlement of their salaries twenty-eight, thousand dollars worth of that stock.
“ The stockholders have no right to enter into or participate in any combination, the object of which is to divest the company of its property and obtain it for themselves to the prejudice of the members or creditors. Nor are they entitled to any share of the capital stock, or-to any dividends of the profits, until its creditors are paid.
“The property of the corporation in equity is regarded as held intrust for the payment of its debts; and a sale of its capital stock, and a division of the proceeds among the directors, will not defeat the rights of creditors.” 2 R. R. 573. Field on Corporations, $172 and 173, p. 187., Chicago R. R. Co. vs. Howard, 7 Wall. 392. Jackson vs. Ludeling, 21 Wall. 916.
5. C. B. Johnson is the holder of a note of $1000, signed by Spencer *1367 Field as president. This claim was dismissed by the lower court. The evidence establishes that this note was held by Folger until after its maturity. Spencer Field took it from him and placed it in the hands of the company’s attorney for collection against the company. He swore that it was given for a loan from Folger to the company, and that the amount thereof was deposited in the New-Orleans National Bank. The company’s cash-book shows no such entry, and the evidence adduced in support of that alleged loan and of the disposition made of the same is as vague as unsatisfactory. The loan was not authorized by a resolution, and two of the managers and directors swore they had no knowledge of it. Johnson was not even called as a witness, during the trial, to sustain bis own demand. His silence and the circumstances which surround Field’s course as to that note, justify the belief that said note represents a fraction of the claim which he considered he could justly realize from the company. He was — he said — under the impression that — as president of said company — he could not sue in his own name, and we are left under the unremoved impression that he alone has an interest in the judgment obtained by Johnson. That judgment entitles him to only a proportionate share, in any balance that may remain to be distributed among the stockholders.
6. As to those creditors who are not stockholders or the transferrees of stockholders, and who have caused execution to issue out of the judgments rendered in their favor, they have the privilege which results from their respective seizures and must be paid — after satisfaction of the costs incurred in this case and the lessor’s claim — in the order in which their seizures are levied. The creditors to be so paid are A. F. Cochran, A. Martin, G-. Lauson, John L. Sterry, Forstall & Delavigne and Peter Fink.
7. After satisfaction of the judgments referred to in the preceding paragraph, the claims of the city of New Orleans, Bentinck Egan and H. Cartens are the next in rank, and must be paid out of the proceeds of the sale; and any balance then and thereafter remaining in the hands of the sheriff, shall be applied to the judgments of C. B. Johnson, Thomas G-. Mackie, J. F. Follett and Francisco Villegas, in proportion corresponding to the amounts of said balance and judgments. • As stockholders or the transferrees of stockholders, after maturity of the transferred claims, the four last-named parties did not and could not acquire any preference over one another.
Of all the appellees, Bentinck Egan is the only one who has asked an-amendment of the judgment of the lower court, and we cannot — as suggested — postpone the distribution of the proceeds of the sale, in the interest of those who have not appealed. To do that, we would have to remand the case.
*1368 It is, therefore, ordered, adjudged and decreed that the judgment of the lower court is amended as follows: Out of the proceeds of the sale retained by the sheriff, and after paying the costs incurred in this case, in this and the lower court, he shall pay the seizing and opposing creditors in the order hereinafter indicated, to wit:
1st. To Peter Marcy, as lessor, the several sums, with interests and costs allowed him by the judgment appealed from.
2d. In the order of the seizures levied by them, the judgments obtained by A. P. Cochran, A. Martin, G. Lauson, John L. Sterry, Forstall and Delavigne and Peter Pink, with the interest, and costs to which they are each entitled.
3d. To the city of New Orleans two hundred dollars — to Bentinck Egan five hundred and ninety dollars, to Brady and McLellan two hun ■ dred and forty-seven dollars and thirty cents, and to Henry Cartens one hundred twelve dollars and seven cents.
4th. To Prancisco Villegas, J. P. Follett, Thomas G. Mackie and C. B. Johnson, the balance of the proceeds of the sale, in proportion to the amount of their respective judgments.
It is further ordered, adjudged and decreed that the opposition of the State of Louisiana is dismissed as in case of nonsuit, and its rights specially reserved, and that — as hereinbefore amended — the j udgment of the lower court is affirmed.
Rehearing refused.